IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| DEMARCUS BELL, #1252593 | § | |
| VS. | § | CIVIL ACTION NO. 6:07cv415 |
| SUN A. BERG, ET AL. | § | |

MEMORANDUM OPINION AND ORDER

Plaintiff Demarcus Bell, a prisoner confined at the Beto Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was referred to the undersigned by consent of the parties pursuant to 28 U.S.C. § 636(c). The present Memorandum Opinion concerns the Defendants' motion for summary judgment (docket entry #32). The Plaintiff did not file a response.

Plaintiff's Factual Allegations

The Plaintiff's right leg was amputated just below the knee prior to his arrival at the prison system. The lawsuit concerns the Plaintiff falling while going down a flight of stairs on March 16, 2006. On November 5, 2007, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The Plaintiff testified that he was moved from the bottom level of a row of cells to the third level on March 15, 2006. He complained to the guards that were moving him that he should not be required to go up and down stairs because of his amputated leg, but he was told that he would receive a disciplinary case if he refused to comply with the new housing assignment. The Plaintiff complied with the order to move

to the third row. On the following day, March 16, 2007, he fell coming down the stairs. The Plaintiff testified that he fell about half-way down a flight of stairs. His amputated leg and lower back were injured during the fall. Nurse Charles Johnson examined him, but he did not document the examination in the Plaintiff's medical records. The Plaintiff testified that he subsequently started submitting medical requests and was examined by Dr. Thompson fourteen days later. Dr. Thompson told him that he possibly had nerve damage. Medication was prescribed, including Ibuprofen and Naproxen.

In a Memorandum Opinion (docket entry #17), the Court permitted the Plaintiff to proceed with his claims against the officers who forced him to move to the third row. The officers were Captain Nemier Herod, Officer Felipe Martinez and Officer Sherry Dickens. The Plaintiff testified that the officers could see that he had an amputated leg and that it was obvious that he should not be moved to the third row under the circumstances. The Court permitted the Plaintiff to proceed with his deliberate indifference claims against the officers because they could plainly see that he faced a risk of falling down when using the stairs.

## Motion for Summary Judgment

Defendants Herod, Martinez and Dickens filed a motion for summary judgment on February 4, 2008. They argued that they were not deliberately indifferent and that they are entitled to summary judgment based on qualified immunity. In support of their motion, they submitted relevant portions of the Plaintiff's classification and medical records, along with affidavits from Dr. Harold B. Clayton and Beverly Stewart.

The Defendants noted that they moved the Plaintiff to the third row on March 15, 2006. The Plaintiff's medical restrictions in effect at that time, which were shown on a HS18 form, did not

include a restriction limiting his housing assignment to the ground floor. The Defendants moved him in accordance with a third row housing assignment issued by the Unit Classification Committee ("UCC"). The Defendants asserted that the Plaintiff was able to climb the stairs to the third row without a problem. He did not fall until the following day. The Defendants argued that their actions were reasonable. They simply followed the UCC's orders, which were not contrary to the medical restrictions in the Plaintiff's records.

The affidavit by Dr. Harold B. Clayton, a medical doctor employed at the Beto Unit, indicated that the records reveal that the Plaintiff was able to move about with the aid of crutches, which would not preclude him from being able to traverse stairs. A ground floor restriction was not added until after the alleged fall on March 16, 2006. He noted that the medical records reveal that Dr. Thompson examined the Plaintiff on March 30, 2006. Dr. Thompson made a diagnosis that the Plaintiff had acute back pain with inflamation of the sciatic nerve. An x-ray and Ibuprofen were ordered. The x-ray revealed that the Plaintiff did not have any fractures nor dislocations. There was no subsequent treatment, although there was an instruction to take Ibuprofen as needed. Dr. Clayton concluded his statement by indicating that there was no objective evidence that the Plaintiff sustained any serious injuries nor would his injuries require long term care.

The affidavit by Beverly Stewart, who is the Manager of Classification Operations for the prison system, discussed the role of the UCC in making housing and work assignments. She noted that members of the UCC are not medically trained and that they must rely on the restrictions made by medical personnel. The members do not have access to an inmate's medical records, other than the HS18 form. She noted that officers do not determine where an inmate will be housed. That decision is made by the Warden, the UCC, or people designated by the Warden. If an inmate is

dissatisfied with his housing assignment, he can request a change through authorized unit staff, file a grievance, or send a request to medical to have his housing restrictions reviewed.

The Defendants went on to discuss a case cited in this Court's previous opinion allowing the Plaintiff to proceed against them, which was *Sample v. Rodeen*, 90 Fed. Appx. 701 (5th Cir. 2004). Both cases concern inmates falling down a flight of stairs. *Sample* was dismissed because there was no deliberate indifference because the plaintiff had not shown that the defendants acted with subjective recklessness or that they were aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and also drew the inference. The Defendants noted that this Court distinguished the facts of this case from *Sample* by noting that the Plaintiff's disability was plainly evident and thus they should have been aware that he faced a risk of falling. The Defendants argued that this case should actually be dismissed in light of *Sample* because there were no medical restrictions forbidding a housing assignment on an upper row in either case. Moreover, the Plaintiff had an amputated leg prior to being incarcerated and was able to ambulate via the use of crutches. They argued that the facts of this case do not support an inference of deliberate indifference.

The Defendants also argued that the Plaintiff's amputated leg was not a serious medical need. They again noted that he was able to ambulate with crutches and nothing precluded him from being able to traverse the stairs. They additionally noted that the Plaintiff's injuries were not serious. They argued that the deliberate indifference claim must fail due to the lack of a serious medical need.

The Defendants argued that the claims against Defendant Herod should be dismissed for the additional reason that there is no *respondeat superior* liability in civil rights cases and that the Plaintiff has not shown a causal connection between Herod and the Plaintiff's alleged harm. They argued that they are entitled to qualified immunity because the competent summary judgment

evidence does not show that they acted with deliberate indifference and does not show that they acted unreasonably. They finally argued that the Plaintiff is not entitled to punitive damages because he has not shown that their conduct was so egregious or reprehensible as to warrant punitive damages. The details of their arguments shall be discussed more fully in the Discussion and Analysis section that follows. It is again noted that the Plaintiff did not respond to the motion for summary judgment.

<u>Discussion and Analysis</u>

Summary judgment is proper when the pleadings and evidence on file show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party for summary judgment has the burden of proving the lack of a genuine issue as to all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1221-23 (5th Cir. 1985).

In deciding a motion for summary judgment, the Court must make a threshold inquiry in determining whether there is a need for a trial. "In other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. at 247-48. In making this threshold inquiry, the Court must consider that "[s]ummary judgment is proper when, viewed in the light most favorable to the non-moving party, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Smith v. Xerox Corp.,* 866 F.2d 135, 137 (5th Cir. 1989) (citations omitted); Fed. R. Civ. P. 56(c).

Once the movants make a showing that there is no genuine material fact issue to support the nonmovant's case, the nonmovant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988); *see also Celotex*, 477 U.S. at 324. Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the nonmovant must present evidence sufficient to support a resolution of the factual issues in his favor. *Anderson*, 477 U.S. at 257. Summary judgment is proper if the affidavits, depositions, answers, and admissions on file fail to establish the existence of an element essential to the plaintiff's case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. The nonmovant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Texas Dept. of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004); *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001).

The first issue raised by the Defendants concerns whether they were deliberately indifferent to the Plaintiff's serious medical needs. Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and an actionable claim under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than just mere negligence. "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

If prison officials knowingly give an assignment to an inmate which may significantly aggravate a serious physical ailment, then such act would constitute deliberate indifference to serious medical needs. *Jackson v. Cain*, 864 F.2d at 1246. As was previously noted, the Fifth Circuit discussed a case similar to the present case in *Sample v. Rodeen*, 90 Fed. Appx. 701 (5th Cir. 2004). The plaintiffs in both cases fell down a flight of stairs after being assigned to an upper row. The Fifth Circuit rejected the claim that a doctor was deliberately indifferent by removing the ground floor only restriction without conducting a physical examination. The Fifth Circuit also rejected a claim against the officers on duty at the time of the fall who allegedly disregarded a risk that he might fall and failed to assist him down the stairs. The Fifth Circuit explained that the plaintiff had not shown subjective recklessness or that they were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and also drew the inference.

In the previous opinion in this case, the Court noted a distinguishing factor between the two cases. In *Sample*, the plaintiff stated that he had feeble knees. He had temporarily been given a ground floor restriction following cataract surgery. He fell after the ground floor restriction was lifted and he was reassigned to an upper level. In this case, the Plaintiff's disability was somewhat more severe and visibly obvious. The Plaintiff told the Defendants that he could not go up and down the stairs. The Defendants could see that it was difficult for him to go up and down the stairs, regardless of the UCC's assignment and the medical restrictions. Despite the obviousness of the Plaintiff's situation, the Defendants forced him to accept the third row housing assignment or be disciplined. The Court concludes that there are disputed issues of material fact as to whether the Defendants were deliberately indifferent to the Plaintiff's serious medical need by making him go up and down the stairs. This issue will have to be decided at trial by a jury.

The Defendants next argued that the claims against Captain Herod should be dismissed because there is no *respondeat superior* liability in § 1983 lawsuits. They asserted that Captain Herod was sued just because he was the on-shift building captain who allowed the move to the third row. In order to successfully plead a cause of action in a civil rights case, a plaintiff must enunciate a set of facts that illustrate a defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). The Defendants correctly noted that there is no *respondeat superior* liability or vicarious liability. *Id.* A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). In this case, the Defendants did not accurately characterize the Plaintiff's claims with respect to Captain Herod. The Plaintiff's allegations reveal that he had a greater role than simply being the shift supervisor. The Plaintiff alleged that Captain Herod was involved in the move and that he acted as the picket officer in opening the Plaintiff's cell door on the first floor in order to move him to the third floor. Consequently, Captain Herod's personal involvement in the move was the same as the other officers. Furthermore, Captain Herod, as a higher ranking officer, was in a position to question the assignment to an upper row. However, he did not question the assignment. Instead, the Plaintiff was threatened with a disciplinary case if he did not go to the assigned cell. Once again, the jury will need to decide whether the conduct of the Defendants amounted to deliberate indifference to a serious medical need.

The Defendants also argued that they are entitled to summary judgment based on qualified immunity. The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established

rights which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wilson v. Layne*, 526 U.S. 603, 614 (1999). The doctrine of qualified immunity shields government officials "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Fraire v. Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992), *citing Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The objective reasonableness of an official's conduct must be measured with reference to the law as it existed at the time of the conduct in question. *Anderson*, 483 U.S. at 639; *Jackson v. City of Beaumont Police Department*, 958 F.2d 616, 620 n. 5 (5th Cir. 1992) (citations omitted). *See King v. Chide*, 974 F.2d 653 (5th Cir. 1992) (discussing qualified immunity in the context of force used against an arrestee). The evaluation of a qualified immunity claim involves a two-step inquiry. *Harper v. Harris County*, 21 F.3d 597, 600 (5th Cir. 1994); *Colston v. Barhnart*, 130 F.3d 96, 99 (5th Cir. 1997). The first step is to determine whether the plaintiff has shown a violation of a clearly established constitutional right. *Id.* The second step requires the court to determine whether the defendant's conduct was objectively unreasonable under existing clearly established law. *Id.*

Issues concerning qualified immunity should be resolved at the earliest possible stage. When factual issues are still in dispute at the time of trial, a court may not be able to make a decision as to whether officers are entitled to qualified immunity until the factual issues are resolved by a jury. *See Lampkin v. City of Nacogdoches*, 7 F.3d 430 (5th Cir. 1993). In such cases, the jury will have to decide "the underlying historical facts in dispute that are material to the resolution of the questions whether the defendants acted in an objectively reasonable manner in view of existing law and facts available to them." *Id.* at 435. *See also Presley v. City of Benbrook*, 4 F.3d 405, 409-10 (5th Cir. 1993). The Fifth Circuit has also held that "while qualified immunity ordinarily should be decided

by the court long before trial, if the issue is not decided until trial the defense goes to the jury which must then determine the objective legal reasonableness of the officers' conduct." *McCoy v. Hernandez*, 203 F.3d 371, 376 (5th Cir. 2000).

In the present case, material facts are in dispute as to whether the Defendants were deliberately indifferent to the Plaintiff's serious medical needs and whether the Defendants' conduct was objectively unreasonable under existing clearly established law. A jury will have to determine the underlying facts that will determine whether the Defendants are entitled to have the case dismissed based on qualified immunity.

The final issue raised by the Defendants concerns punitive damages. The Supreme Court has held that a "jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). *See also Lincoln v. Case*, 340 F.3d 283, 291 (5th Cir. 2003). The material facts are in dispute on this issue. Moreover, the Court can envision a jury finding that the Defendants acted with reckless or callous indifference. The evidence presented at trial may show that a punitive damages instruction should not be included in the jury instructions, but it is still a possibility at this juncture.

As a final matter, the Court again notes that the Plaintiff did not respond to the motion for summary judgment. Instead of filing a response, he asked the Court to appoint him an attorney. The Court is aware of the difficulties lay people have in responding to legal documents such as a motion for summary judgment; nonetheless, the Plaintiff is expected to file response. The Plaintiff is placed on notice that the lawsuit may be dismissed for failure to prosecute if he fails to file a response to motions filed by the Defendants in the future. It is accordingly

**ORDERED** that the Defendants' motion for summary judgment (docket entry #32) is **DENIED**.

**So ORDERED and SIGNED this 10th day of March, 2008.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE